IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CAROLYN TUTOR**                                                                            **PLAINTIFF**

**V.**                                                  **CIVIL ACTION NO.:3:22-CV-60-DAS**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

## MEMORANDUM OPINION

The plaintiff seeks judicial review of the Social Security Administration's decision denying her application for disabled widow's benefits and supplemental security income. The undersigned, having reviewed and considered the record, briefs and oral argument and the applicable regulations and case law, finds the Commissioner's decision must be affirmed.

## FACTS

The plaintiff, Carolyn Tutor, filed for benefits on February 24, 2020, alleging onset of disability commencing February 10, 2019. The onset date was later amended to May 21, 2020. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on August 29, 2021. (Dkt. 7, p. 20-30).[1] The Appeals Council denied the request for review and this timely appeal followed.

The ALJ determined Tutor had the following severe impairments: depression, anxiety with panic attacks, post-traumatic stress disorder (PTSD), tendinitis of the right elbow, a cyst on the left ovary and obesity. The ALJ found she retained the residual functional capacity (RFC) to perform light work. She can lift, carry, push and pull twenty pounds occasionally and ten pounds

---

[1] The administrative record is Docket 7. The references use the administrative numbering because the court system is locating pages by the administrative number.

frequently.  She can stand/walk for six hours and sit for six hours in an eight-hour workday. She can never climb ladders or scaffolds but can occasionally climb ramps and stairs.  She can occasionally stoop and kneel but cannot crouch or crawl.  She can frequently finger and handle but cannot work around heights.  She can occasionally drive.  She can sustain concentration and attention sufficiently to understand, remember, and carry out tasks and job instructions for two-hour periods in an eight-hour day.  She can occasionally interact with coworkers and supervisors but not the general public.  She is unable to perform her past relevant work as a nursing assistant which is performed in the medium to very heavy range of exertion.  Tutor was fifty on the date of onset and has a limited education.  The vocational expert testified the claimant could work as a garment sorter and marker, both light work, with over two million jobs in the national economy.  Based on that testimony the ALJ found Tutor was not disabled.

## Analysis

The plaintiff asserts the ALJ failed to consider whether she could sustain employment for a significant time and failed to develop the record.

### Sustaining Employment

Initially, the plaintiff argues the ALJ erred because his decision does not specifically address her capacity to sustain employment over time.  *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1989); *Leidler v. Sullivan,* 885 F.2d 291, 293 (5th Cir. 1989).  Usually, the issue of whether a claimant can maintain employment is an intrinsic part of and subsumed into the ALJ's decision setting the claimant's RFC.  *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).  It is the exceptional case where a medical impairment and its symptoms require a separate analysis of the ability to sustain employment.  *Id.*  But where a claimant contends that they simply cannot

2

work at all, the courts have held that the failure to separately address a claimant's capacity to sustain employment is not error. *Id.*

In *Singletary* the claimant had a ten-year history of severe mental illnesses, variously diagnosed as antisocial personality, inadequate personality, and passive-aggressive personality. During that time Singletary led a nomadic existence wandering through three different states, and living in hospitals, bus stations, missions, the woods, and the homes of relatives. He also spent considerable amounts of time in different hospitals and mental institutions. *Singletary*, 798 F.2d at 820. His medical providers all agreed Singletary had serious long term mental impairments and a poor prognosis. *Id.* They assumed "that he would be back;" that he was less successful than typical for someone with an anti-social personality because of his "limited intellectual ability," and specifically that it was doubtful he "may be able to return to employment." *Id.* at 822. He also had a history of sporadic, short-term employment. He testified his own relatives would no longer hire him because he did more harm than good. *Id.* Because of this spotty employment history, the ALJ found he was not disabled. The ALJ found his mental conditions were not severe enough to preclude employment "for more than short periods of time—far less that twelve continuous months." *Id.* at 821. The court reversed the Commissioner's decision, explaining that Singletary's sporadic, short-term employment did not preclude a determination of disability. In Singletary's case, the ALJ erred because he failed to consider and address whether Singletary had the capacity to sustain any employment he might obtain. *Id.*

*Leidler* is factually similar. Leidler had been diagnosed a paranoid schizophrenic almost two decades before his application and been under constant medical supervision since his diagnosis. Medications only partially controlled his symptoms. Like Singletary, he had a history of sporadic, short-term employment. The court reversed the Commissioner's decision finding

3

ALJs must consider and address the ability to sustain employment in applicants with serious mental illness, because they may be able to engage in substantial gainful activity, but not be able to sustain employment based on the nature of their illnesses. *Leidler*, 855 F.2d at 292.

In later cases the Fifth Circuit clarified the conditions under which *Singletary* would require ALJs to specifically address a claimant's capacity to sustain employment separately from the determination of the RFC. *Singletary* applies only when a claimant is unable maintain employment based on intermittently occurring symptoms of *disabling intensity* and if the adjudicator does not address this evidence as it relates to the claimant's ability to perform work on a regular and continuing basis. *Dunbar v, Barnhart,* 330 F.3d 670 (5th Cir. 2003).

In this case Tutor suffers from depression, anxiety with panic attacks, and post-traumatic stress disorder. Her medical records do show some fluctuation in her symptoms, but her symptoms showed improvement with medications. She reported some increase in symptoms because of financial and other stresses such as the anniversary of her husband's death. There was one point documented in her treatment records where her therapist suggested she should have inpatient treatment for an exacerbation with suicidal thoughts, but because she could not afford it, this episode was managed on an outpatient basis. The plaintiff also testified that she would have good days for a couple of days and then crash for two or three days. Nothing in her records shows the level of disability shown in *Singletary*. Furthermore, Tutor's position is that she is continuously disabled, rather than being able to work only intermittently, making her case distinct from the *Singletary* line of cases. Apart from the one, short-term exacerbation, when in-patient treatment was suggested, the evidence does not show symptoms at a disabling level. The ALJ clearly thought Tutor's symptoms were relatively mild. He found only mild limits in remembering and using information, moderate limits in interacting with others and in

concentration, persistence, and pace, but no limits in self-care and adaptation. This case is an example of the more typical case in which the issue of sustainability has been subsumed into the RFC determination.

The plaintiff also complains that the ALJ erred when noting that she reported regularly to work for a part-time job. This is an accurate recitation of information provided by the plaintiff during the application process, which the ALJ included in a long list of Tutor's reports of what she said she could—and could not do. She argues the ALJ erred in relying on this work experience because she testified at the hearing that she had been unable to continue that employment. The reference is half of a single line in a ten-line recitation of what Tutor herself reported, included in a detailed ten-page decision. Furthermore at Step One, the ALJ acknowledged that her low wages of $264.00 in the third quarter of 2020 was the "product of temporary work activity." R. 23. After considering the matter, the court finds the ALJ implicitly acknowledged Tutor's testimony about not sustaining this work and thus his reference to the work experience was not error.

### **Failure to Order a Consultative Examination**

The plaintiff requested a psychological, consultative examination. She argues the ALJ erred when he did not order that examination and therefore failed to develop the record adequately.

Under 20 C.F.R. 404.1519a(b), the Commissioner has the discretion to order a consultative examination (CE) when evidence is needed that is not contained within the records of the medical sources or cannot be obtained for reasons outside the claimant's control. It should be ordered if highly technical or specialized evidence is needed but not available, or if there is an indication of a change in condition that is likely to affect the ability to work, but the current

severity of the impairment is not established. The Commissioner's discretion is limited where a claimant "raises the requisite suspicion" that such an examination is necessary to discharge the ALJ's duty of full inquiry. *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989).

In this case the ALJ had a longitudinal record of Tutor's treatment and her admissions attesting to her capacity to handle self-care and perform a variety of normal activities of daily living. He also had the benefit of opinions from the State Agency Medical Consultants (SAMCs) who, after reviewing the available records, found she did not have any severe mental conditions. The SAMCs found Tutor had only mild impairments in her ability to interact with others and in concentration, persistence and pace, and no limitations in using information and self-care and adaptation. While the ALJ , based on later records, disagreed with these opinions, finding both severe mental problems and some limitations, the fact that the SAMC report found no severe mental impairment supports the ALJ's RFC. Accordingly, the ALJ had sufficient information on which to base the decision and did not abuse his discretion is declining to order a consultative examination.

## CONCLUSION

Finding no legal error, and finding the decision is supported by substantial evidence, the court finds that the Commissioner's decision should be affirmed.

**SO ORDERED AND ADJUDGED** this the 19th day of October, 2022.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**